UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID B. WASHINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:09-CV-0784 HEA |
| | ) |
| CITY OF UNIVERSITY CITY, *et al.*, | ) |
| | ) |
| Defendant. | ) |

# OPINION, MEMORANDUM & ORDER

This matter is before the Court on Defendants City of University City, Missouri, Lietenant Haftarczyk, Police Officer Benjamin Guittar, and Police Officer Jean Burks's (collectively, "Defendants") Motion for Summary Judgment on Counts I and II of Plaintiff's Complaint. [ECF No. 34]. Plaintiff David Washington filed a response in opposition to the motion [ECF No. 45], to which Defendants replied [ECF No. 50], and Plaintiffs filed a sur-response [ECF No. 54]. For the reasons set forth below, Defendants' motion is granted.

**Factual Background**[1]

---

[1] The Court's recitation of the facts is drawn form the parties' statements of material facts filed in conjunction with Defendants' motion for summary judgment and Plaintiff's opposition.

On or about May 20, 2007, Plaintiff was outside his home in University City, Missouri, operating gas-powered grass trimmer along the border and boundary of his front yard. While trimming his grass, Plaintiff alleges that Bernard Zinn[2] came onto his property without permission wielding–what appeared to Plaintiff to be–a 2 x 4 piece of lumber or a carpenter's level approximately 4 feet in length. Plaintiff alleges that Zinn approached him with the object, and began yelling at plaintiff because Zinn believed that Plaintiff was responsible for discarded grass located–on what Zinn believed–was his automobile. Plaintiff contends that he put down the grass trimmer, pleaded with Zinn not to hit him, then ran around his property trying to gain entry to his house. As he was doing so, he pulled out a .380 caliber automatic handgun that was concealed on his person, and fired two shots into the air. Plaintiff contends these shots were fired on accident. At the time of the incident, Plaintiff had his state-issued permit authorizing him to carry the firearm on his person.

On duty at the time was Lt. George Haftarczyk, and Officers Guittar and Burks of the University City Police Department. According to Lt. Haftarczyk, he received a dispatch that "at 8618 Spoon a black male wearing a baseball hat and

---

[2] Zinn was dismissed as a defendant in this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure due to Plaintiff's failure to serve process on Zinn.

goggles was outside with a gun threatening to shoot people." *See* ECF No. 36, Def. Exh. D at 20. According to Officer Guittar's incident report, when he responded to the identified location, he saw Lt. Haftarczyk at his police vehicle with his shotgun pointed at Plaintiff, who was still holding his gun. Officer Guittar approached Plaintiff with his gun drawn and ordered Plaintiff to drop the weapon, and Plaintiff complied. Officer Guittar then seized Plaintiff's handgun and retrieved two discarded shell casings from Plaintiff's yard.

At the scene of the incident, Officer Guittar took a statement from Zinn. According to Guittar's incident report, Zinn stated that during the verbal confrontation, Plaintiff told him "I don't want to do this," pulled out his pistol, pointed the firearm directly at Zinn's face and threatened, "I'll shoot you." *See Id.*, Def Exh. C at 4. The incident report stated that Officer Guyton met with Plaintiff's neighbor, Dennis Gordon, who stated that he was sitting inside his house and heard someone yell, "terrorist terrorist I can kill you." Gordon further stated that he opened his front door and saw Plaintiff brandishing a firearm, pointing it at Zinn. *See Id.* Further, according to the report, Guyton took a statement from another neighbor, John Demarr, who stated that he was in his backyard at the time of the incident and heard two gunshots. He further stated that he walked around to his front yard and saw Zinn with a stick in his hand.

3

Plaintiff was arrested by Officer Guittar and transported to the University City Police Department. He was arrested at 2:17 pm and booked at 3:00 pm. During the booking process, Plaintiff contends that he requested his eyeglasses and eye drops from Officer Guittar, however, Guittar refused and allegedly "taunted" Plaintiff by using a gesture to indicate no. Lt. Haftarczyk, the commanding officer at the scene of Plaintiff's arrest, instructed Officer Burks to photograph the scene of the incident in question, and ordered her to transport Plaintiff for medical assistance and evaluation to DePaul Health Center. According to Officer Burks's incident report, while she was waiting for the hospital staff with Plaintiff, Plaintiff told her that during the confrontation with Zinn, he removed and displayed his handgun from his pocket and fired his firearm towards the sky to scare Zinn. Officer Burks executed an Affidavit in Support of Application for Detention, Evaluation, and Treatment–Admission for 96 Hours, which stated the following:

> "Mr. Washington armed himself with a firearm and threatened his neighbor by pointing the gun at him, chambering a round and releasing the safety. Mr. Washington referred to the neighbor as "You terrorist!" Witnesses stated that Washington has been displaying behavior out of the ordinary for the past week and has been worried about his well-being. ... Washington also fired two gunshots into the sky. He stated that he only remembers one round."

*Id.* Def. Exh. I at 1.

Plaintiff was taken to DePaul Hospital on May 20, 2007 and subsequently was transferred that day to St. Mary's Health Center. Plaintiff was held there until May 22, 2007 for a total of two days and two nights. His medical records note that he had a "cornea transplant ... uses eye drops frequently through the day for this, is to see his eye doctor tomorrow." *See Id.* Def. Exh. L.

Plaintiff was charged in University City Municipal Court with the offense of Unlawful Use of a Weapon, to which he pleaded "not guilty." Plaintiff's case went to trial and on February 13, 2008, and the Court found him guilty for the offense of Unlawful Use of a Weapon. He was sentenced to probation for 12 months, with the special condition that he shall have no possession of firearms during his probationary period. Plaintiff appealed the judgment but St. Louis County Circuit Court dismissed his appeal.

## **Summary Judgment Standard**

Defendants now move for summary judgment in their favor and against Plaintiff on counts I and II of Plaintiff's Complaint. The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409

5

F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or other evidence setting forth specific facts that show a genuine issue of material fact exists. Fed.R.Civ.P. 56(c). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## Discussion

*Count I*

In Count I of his Complaint, Plaintiff alleges that Defendants University City, Officer Burks, and Lt. Haftarczyk deprived him of the rights afforded to him under the Fourth, Fifth, and Fourteen Amendments when they caused him to be confined and then detained at the DePaul Health Center, and subsequently at the St. Mary's Health Center, against his will. He contends that Defendants did not have probable cause or a reasonable basis to subject him to a psychiatric

6

evaluation pursuant to RSMo. 632.305(1). Defendants contend that the actions of Lt. Haftarczyk, and Officer Burks were authorized under RSMo. 632.305 and were objectively reasonable. Further, Defendants argue that their actions were protected by the doctrine of qualified immunity.

Under RSMo. 632.305(1), which sets out the procedure by which a person may be detained for evaluation and treatment purposes of a 96-hour hold, states in relevant part:

> An application for detention for evaluation and treatment may be executed by any adult person . . . and must allege under oath that the applicant has reason to believe that the respondent is suffering from a mental disorder and presents a likelihood of serious harm to himself or to others. The application must specify the factual information on which such belief is based and should contain the names and addresses of all persons known to the applicant who have knowledge of such facts through personal observation.

It cannot be said that Defendants violated RSMo. 632.305. Lt. Haftarczyk, a peace officer for the purposes of the statute, had reasonable cause to believe Plaintiff was suffering from a mental disorder and posed an imminent risk to either himself or others. Based on statements of witnesses, Plaintiff's testimony, and officer affidavits, the uncontroverted facts show the following: Plaintiff was working on his yard with a firearm on his person. Amidst a verbal confrontation with Zinn, he pointed a .380 caliber pistol towards Zinn's head and repeatedly

called Zinn a terrorist. Lt. Haftarczyk responded to a report indicating that Plaintiff was threatening to shoot people. Multiple neighbors witnessed the incident and testified that they saw and heard Plaintiff discharge his firearm into the air, and point the weapon at Zinn. And Plaintiff's testimony regarding his recollection of the incident changed. He stated that the gun accidently went off, and he alleged that he intentionally fired it once but didn't remember a second shot being fired.

Regardless of Plaintiff's recollection of the incident, and regardless of whether Plaintiff felt threatened by Zinn when he had a 4 foot object in his hand, it is clear that Defendants' actions were warranted. Based on the facts gathered at the time of the incident, defendants Haftarczyk, Burks, Guittar had reasonable cause to believe Plaintiff should be detained. A showing of probable cause in the mental health seizure context requires only a "probability or substantial chance" of dangerous behavior–not an actual showing of dangerous behavior. *Illinois v. Gates*, 462 U.S. 213, 245 n. 13 (1983). In this case, there is no doubt that Defendants could have determined that a probability or substantial chance of dangerous behavior was present.

***Qualified Immunity***

Defendants Haftarczyk and Burks further assert in the alternative that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. ----, 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not only a defense to liability but also an immunity from suit. *Id.* *Heartland Academy Community Church v. Waddle,* 595 F.3d 798, 804 (8th Cir. 2010).

In analyzing the officials' claim of qualified immunity the Court must consider two questions: (1) "whether the facts that a plaintiff has alleged or shown," when viewed in the light most favorable to Plaintiff, support a finding that the conduct of Defendants violated a constitutional right, and (2) whether that constitutional right was "clearly established" at the time such that a reasonable official would have known that his or her actions were unlawful. *See Pearson v. Callahan,* __U.S. __, 129 S.Ct. 808, 815-16 (2009) (citations omitted); *see also Saucier,* 533 U.S. at 201. Qualified immunity is appropriate only if no reasonable fact finder could answer yes to both of these questions. *See Plemmons,* 439 F.3d

at 822; *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

The Court has discretion to decide which of the two questions to answer first. See *Pearson*, 129 S.Ct. at 818; *Nelson*, 583 F.3d at 528. Here, the Court finds it unnecessary to go beyond the first question. As discussed above, Plaintiff has failed to offer evidence that the conduct of Defendants Haftarczyk and Burks violated any of Plaintiff's constitutional rights. As such, both individual defendants are entitled to qualified immunity.

*Count II*

In Count II of his Complaint, Plaintiff alleges that Defendant Guittar violated his constitutional rights by showing deliberate indifference to Plaintiff's serious medical needs in denying his repeated requests for his eye glasses and eye medication. To state a claim for medical mistreatment, plaintiff must plead facts sufficient to indicate a deliberate indifference to serious medical needs. *Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate

indifference analysis to a pretrial detainee's Fourteenth Amendment claim); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (Eighth Amendment); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995) (same). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106. In order to show deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs and that defendants actually knew of but deliberately disregarded those needs. *Vaughn*, 438 F.3d at 850. An objectively serious medical need is one "that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would have easily recognized the necessity for a doctor's attention.'" *Jones v. Minnesota Dept. of Corrections*, 512 F.3d 478, 481 (8th Cir.2008), *quoting Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir.1995).

Plaintiff fails to meet this standard. Based on Plaintiff's own filings, and Defendant Guittar's deposition testimony, Guittar had no recollection of any such medical request by Plaintiff. Moreover, Plaintiff has failed to offer evidence that Guittar's alleged denial of medical attention was damaging to Plaintiff. The June 12, 2008 letter from Plaintiff's doctor, Dr. Sheppard, merely explains Plaintiff's medical history regarding his eyes and vision. Nowhere in Dr. Sheppard's report does he state that the events that occurred on the day of Plaintiff's arrest

11

contributed to or intensified his condition. Instead, it merely outlines when the problems developed and how it has been treated since. Based on the record as a whole, Plaintiff has failed to set forth facts in controversy sufficient to indicate a deliberate indifference to a serious medical need. As such, Plaintiff's Count II fails to meet the "deliberate indifference" standard, and Defendants' summary judgment motion shall be granted.

## Conclusion

Based on the record before the Court, there exist no genuine issues of material fact. Plaintiff has failed to offer evidence that the Defendants' conduct violated any of his constitutional rights. Further, both Defendant Haftarczyk and Defendant Burks are entitled to qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants City of University City, Missouri, Lietenant Haftarczyk, Police Officer Benjamin Guittar, and Police Officer Jean Burks's Motion for Summary Judgment on Counts I and II of Plaintiff's Complaint. [ECF No. 34] is **GRANTED.**

Dated this 31st day of March, 2012.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE